UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILLIAM HAMES,<br><br>                              Plaintiff,<br><br>-against-<br><br>TOWNSQUARE MEDIA, INC.,<br><br>                              Defendant. | 1:24-cv-03875 (ALC)<br><br>**OPINION & ORDER** |

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff William Hames brings this action for copyright infringement of his photography, specifically one portrait of the musician George Lynch. Before the Court is Defendant Townsquare Media, Inc.'s motion to dismiss the Amended Complaint based on its affirmative defense of fair use. For the reasons detailed below, the Courts grants the motion.

## BACKGROUND

### I.     Factual History

William Hames ("Plaintiff" or "Hames") is a professional photographer with specific expertise in the music industry. *See* ECF No. 27 ¶ 16 ("Amended Complaint" or "AC"). During his career, Hames took a photograph of George Lynch (the "Photograph"), guitarist for the American hard rock band Dokken. *See id.* ¶¶ 2, 17; ECF No. 34-2 at 2–3 (describing Lynch and Dokken). Hames "personally selected the subject matter, timing, lighting, angle, perspective, depth, lens, and camera equipment used to capture the image, and made each and every artistic determination necessary for the creation of the [Photograph]." AC ¶ 19. He took the Photograph "with the intention of it being used commercially . . . including editorial use in articles about Dokken and/or George Lynch." *Id.* ¶ 18.

In 2015, Hames first published the Photograph. *See id.* ¶ 14. In 2019, Hames registered the Photograph with the United States Copyright Office. *See id.* ¶ 15. Hames alleges that "[a]n actual and existing commercial market for the Photograph existed at the time the Photograph was originally published and through the present day in the context of the music, entertainment, media and news reporting industries." *Id.* ¶ 20.

Townsquare Media, Inc. ("Defendant" or "Townsquare") is a media company which owns and operates a website called Loudwire. *See id.* ¶ 3. On or about October 16, 2023, Townsquare published a story on Loudwire (the "Article") describing and quoting an interview from The Chuck Shute Podcast with Don Dokken (the "Podcast") "regarding his former bandmate George Lynch and the band's career and struggles." *Id.* ¶ 35. Embedded at the end of the Article was a video clip from the Podcast (the "Video") hosted on The Chuck Shute Podcast YouTube channel, which Townsquare also hyperlinked in the first paragraph of the Article. *See id.* ¶¶ 38–39; ECF No. 34-2 at 4; ECF No. 34-3 at 2–3. As a function of the embedding, before the Video was played, it displayed its title along with a preview image (the "Thumbnail"). *See* AC ¶¶ 46–47, 52. This image, which Townsquare did not select, included a cropped version of the Photograph along with images of two other musicians and text about the Podcast. *See id.* ¶ 40, 51; ECF No. 27-2.

Hames provided neither Townsquare nor The Chuck Shute Podcast permission to use the Photograph. *See* AC ¶¶ 45–48. Hames alleges that this use by Townsquare constitutes copyright infringement and harms the market for his Photograph. *See id.* ¶¶ 67–69.

**II.    Procedural History**

On May 20, 2024, Plaintiff Hames filed his complaint against Defendant Townsquare, initiating this action. *See* ECF No. 1. On October 1, 2024, Townsquare moved to dismiss the

2

complaint. *See* ECF Nos. 21–23. In response to the motion, Hames filed the Amended Complaint. *See* ECF No. 27. The Court denied Townsquare's first motion without prejudice and granted it leave to file a motion to dismiss the Amended Complaint. *See* ECF No. 31.

On October 29, 2024, Townsquare filed the instant motion. *See* ECF Nos. 32, 33 ("Mot."), 34 (supporting exhibits). Hames filed his opposition on November 12, 2024. *See* ECF No. 36 ("Opp."). On November 19, 2024, Townsquare filed its reply. *See* ECF No. 37 ("Reply"). On January 28, 2025, Townsquare filed a notice of supplemental authority. *See* ECF No. 39.

## STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully," and accordingly, where the plaintiff alleges facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss, courts accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008). However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *see also id.* at 681. Instead, the complaint must provide factual

3

allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555). In addition to the factual allegations in the complaint, "copyrighted and secondary works are incorporated by reference into the pleadings, '[which] themselves supersede and control contrary descriptions of them, including any contrary allegations, conclusions or descriptions of the works contained in the pleadings.'" *Brown v. Netflix, Inc.*, 855 F. App'x 61, 63 (2d Cir. 2021) (quoting *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010)).

## DISCUSSION

"In order to establish a claim of copyright infringement, a plaintiff with a valid copyright must demonstrate that: (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010) (internal quotation omitted). Townsquare moves the dismiss the Amended Complaint on two bases. First, that Hames fails to establish substantial similarity because any infringement would be *de minimis*. Second, that any infringement was fair use.

To evaluate these arguments the Court considers the factual allegations in the Amended Complaint and takes judicial notice of the Photograph, Article, Video, and Thumbnail, which are either attached as exhibits or "relied on by, linked to in, and thereby incorporated into" the Amended Complaint. *Bus. Casual Holdings, LLC v. TV-Novosti*, No. 21-CV-2007, 2022 WL 784049, at *1 (S.D.N.Y. Mar. 14, 2022); *see also* AC ¶¶ 32, 44 (including a link to the Article); Opp. at 5 ns. 1–2 (citing Townsquare's exhibits of the full Article). There is no dispute that these

exhibits, provided in full by Townsquare in support of its motion, are true and correct. *See generally* Opp.

## I. *De Minimis* Infringement

"[S]ubstantial similarity[] requires that the copying is quantitatively and qualitatively sufficient to support the legal conclusion that infringement (actionable copying) has occurred." *Ringgold v. Black Ent. Television, Inc.*, 126 F.3d 70, 75 (2d Cir. 1997). "The quantitative component generally concerns the amount of the copyrighted work that is copied." *Id.* "When the copying is *de minimis*—that is, when the copying 'has occurred to such a trivial extent as to fall below the quantitative threshold of substantial similarity'—it is not unlawful." *Kelley v. Morning Bee, Inc.*, No. 1:21-CV-8420, 2023 WL 6276690, at *5 (S.D.N.Y. Sept. 26, 2023) (quoting *Ringgold*, 126 F.3d at 74–75). "In cases involving visual works, determining whether the 'quantitative threshold' of substantial similarity has been crossed, supporting liability for copyright infringement, depends on the 'observability of the copyrighted work in the allegedly infringing work.'" *Hirsch v. CBS Broad. Inc.*, No. 17 CIV. 1860, 2017 WL 3393845, at *4 (S.D.N.Y. Aug. 4, 2017) (quoting *Sandoval v. New Line Cinema Corp.*, 147 F.3d 215, 217 (2d Cir. 1998)).

Townsquare argues that the alleged infringement is *de minimis* "because it was merely incidental to the embedding of the Video." Mot. at 16. It asserts that the Photograph's presence is equivalent to the appearance of copyrighted images on a wall briefly in the background of a documentary. *See id.* at 17 (citing *Kelley*, 2023 WL 6276690, at *6). According to Townsquare, this lack of intention, coupled with the fact that the Thumbnail "disappears as soon as a viewer begins playback," weighs in favor of *de minimis* use. *Id.* Critically though, where a copyrighted image appears in the thumbnail of an embedded video, it "mak[es] the [image] perpetually visible

5

. . . before a user plays the video." *Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408, 420 (S.D.N.Y. 2021). It is therefore imprecise to equate this potentially long-lasting appearance of the Photograph with background images shown for only a few seconds at a time. Accordingly, the Court does not find the alleged infringement inactionable as *de minimis* use.

**II.    Fair Use**

"Under the Copyright Act of 1976, fair use is a complete defense to a claim of copyright infringement." *Grant v. Trump*, 563 F. Supp. 3d 278, 283 (S.D.N.Y. 2021) (citing 17 U.S.C. § 107 ("[T]he fair use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching, . . . scholarship, or research, is not an infringement of copyright.")).

> To determine whether use of a work is fair, courts consider several factors:
> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

*Yang v. Mic Network, Inc.*, 405 F. Supp. 3d 537, 541–42 (S.D.N.Y. 2019) (internal quotation omitted). "[T]hese four factors are non-exclusive. . . [and] to be explored, and the results weighed together, in light of the purposes of copyright." *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 81 (2d Cir. 2014) (internal quotation omitted).

"[F]air use is an affirmative defense to a claim of copyright infringement, the proponent of which bears the burden of justifying its taking." *Romanova v. Amilus Inc*, 138 F.4th 104, 110 (2d Cir. 2025) (citing *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 547 n.21 (2023) (hereinafter "*Warhol*")). While fair use is typically a "mixed question of fact and law,"

*Swatch*, 756 F.3d at 81, "such a defense may be 'so clearly established by a complaint as to support dismissal of a copyright infringement claim,'" *Kelley v. Morning Bee, Inc.*, No. 1:21-CV-8420, 2023 WL 6276690, at *11 (S.D.N.Y. Sept. 26, 2023) (quoting *TCA Television Corp. v. McCollum*, 839 F.3d 168, 178 (2d Cir. 2016)). "Accordingly, when 'the only two pieces of evidence needed to decide the question of fair use' are 'the original version' and the allegedly infringing version, it is proper to decide the issue on a motion to dismiss." *Yang*, 405 F. Supp. 3d at 542 (quoting *Cariou v. Prince*, 714 F.3d 694, 707 (2d Cir. 2013)).

Because fair use can be clearly ascertained based on the Photograph, Thumbnail, and pleadings, the Court addresses it on Townsquare's motion to dismiss. This complete factual record renders any potential discovery inconsequential. To evaluate the affirmative defense, the Court takes each fair use factor in turn.

    a. <u>Purpose and Character of the Use</u>

The first fair use factor calls for examination of "the purpose and character of the use," including whether "the use merely supersedes the objects of the original creation, or instead" transforms it. *Walsh v. Townsquare Media, Inc.*, 464 F. Supp. 3d 570, 580 (S.D.N.Y. 2020) (internal quotation omitted). "[T]ransformative uses tend to favor a fair use finding because a transformative use is one that communicates something new and different from the original or expands its utility, thus serving copyright's overall objective of contributing to public knowledge." *Authors Guild v. Google, Inc.*, 804 F.3d 202, 214 (2d Cir. 2015). While "[t]he commercial nature of the secondary use is also relevant . . . where it is found to be transformative courts 'do not place much significance on that fact due to the transformative nature of the work.'" *McGucken v.*

*Newsweek LLC*, 464 F. Supp. 3d 594, 605 (S.D.N.Y. 2020) (quoting *Cariou v. Prince*, 714 F.3d 694, 708 (2d Cir. 2013)).

As the Second Circuit recently articulated, "there must be *justification* for copying, which, but for the finding of fair use, would likely infringe the exclusive rights of the rights holder." *Romanova v. Amilus Inc*, 138 F.4th 104, 119 (2d Cir. 2025) (emphasis in original). The Supreme Court has "stress[ed] the importance of a transformative purpose as justification for the copying – that the copying transmit a message that differs from the message communicated by the original." *Id.* at 118 (citing *Warhol*). Transformative-ness "turns on whether *the copying of the original* communicates a message that differs from the message of the original – not whether the copier separately declares such a message." *Id.* at 118–19 (emphasis in original). The Second Circuit has indicated that thumbnail images may inherently be transformative because their use is to provide a preview of the copyrighted content. *See id.* at 116 (citing *Kelly v. Arriba Soft Corp.*, 336 F.3d 811 (9th Cir. 2003), and *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007)).

Hames concedes that Townsquare played no role "in the selection or composition of the" Thumbnail. Opp. at 9; *see also* Mot. at 4 ("The FAC does not allege (nor could it) that Townsquare selected the Photograph for the Video's Thumbnail or that it played any role in creating the Video whatsoever."). This litigation then takes aim not at the Podcast's initial use of the copyrighted Photograph in the Thumbnail, but at Townsquare's publication of the Thumbnail in its Article about the Podcast.

This distinction is important because courts have found fair use in similar circumstances, such as when a media outlet criticized another article and published a screenshot of that article including an unlicensed copyrighted photograph. *See Yang v. Mic Network, Inc.*, 405 F. Supp. 3d

537, 541 (S.D.N.Y. 2019); *Clark v. Transp. Alternatives, Inc.*, No. 18 CIV. 9985, 2019 WL 1448448, at *1 (S.D.N.Y. Mar. 18, 2019). In *Yang*, the court wrote:

> [T]he fact that the original photograph was not reproduced "as a standalone image, but as part of a composite image that showed the manner in which the Post Article's headline, author byline, and the [p]hotograph were arranged on the Post's website indicates that it is being used to identify the subject as the Post Article itself."

405 F. Supp. 3d at 543 (quoting *Clark*, 2019 WL 1448448, at *3–4). There the "use was transformative as the photograph '[wa]s no longer just a depiction of [the] original subject but a sly barb at the original article's sloppy journalism.'" *Id.* at 544 (same).

This distinction is not limited to the context of criticism. Indeed, "[d]isplay of a copyrighted image or video may be transformative where the use serves to illustrate criticism, commentary, or a news story about that work." *Barcroft Media, Ltd. v. Coed Media Grp., LLC*, 297 F. Supp. 3d 339, 352 (S.D.N.Y. 2017). "In the context of news reporting and analogous activities, . . . the need to convey information to the public accurately may in some instances make it desirable and consonant with copyright law for a defendant to faithfully reproduce an original work without alteration." *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 84 (2d Cir. 2014). It is not even necessary that a "'work comment on the original or its author in order to be considered transformative.'" *Clark*, 2019 WL 1448448, at *3 (quoting *Cariou*, 714 F.3d at 706).

Here, Townsquare did not provide any specific analysis of the Photograph in the Article. Still, this incidental use may be transformative. Consider *Walsh v. Townsquare Media, Inc.*, a case which involved a social media post from the rapper Cardi B. *See* 464 F. Supp. 3d 570, 577–78 (S.D.N.Y. 2020). The social media post contained a copyrighted image of the rapper at a fashion show. *See id.* at 575–76. Townsquare published an article which embedded the social media post, a use which the plaintiff asserted to constitute copyright infringement based on the presence of his

9

image. *See id.* at 577–78. In finding Townsquare's use fair, the court concluded that although "[t]he [p]hotograph was taken to depict Cardi B at Tom Ford's fashion show . . . Defendant did not publish the [p]hotograph simply to present its content." *Id.* at 581 (internal quotation omitted). Continuing, the court wrote:

> It did not use the [p]hotograph as a generic image of Cardi B to accompany an article about Cardi B, . . . or as an image of her at Tom Ford's fashion show alongside an article about the fashion show. . . . Rather, Defendant published the [p]ost, which incidentally contained the [p]hotograph, because the [p]ost—or, put differently, the fact that Cardi B had disseminated the [p]ost—was the very thing the [a]rticle was reporting on.

*Id.* at 581–82. Similarly here, the Podcast itself was the subject of Townsquare's reporting.[1]

In opposition, Hames argues that the Photograph was still used for its original purpose, "to cover news regarding heavy metal and hard rock music for the objective of commercial news reporting," but neglects to address that Townsquare's use was solely to report on the Podcast. Opp. at 10. As the court noted in *Walsh*, "Defendant published the [p]ost in order to provide readers with the original social media interactions . . . and included the [p]hotograph as a necessary part of the [p]ost. Indeed, no other image—not even 'the [p]hotograph [itself] as a standalone image'— would have fulfilled the same purpose as the [p]ost itself." 64 F. Supp. 3d at 582–83 (quoting *Clark*, 2019 WL 1448448, at *4). Here too, Townsquare did not use the copyrighted image of George Lynch for his likeness, and the inclusion of the Photograph, without the Video, would not have fulfilled the same purpose as the inclusion of the Video—the subject of the Article—itself.[2]

---

[1] Hames argues that the inclusion of the Video was not necessary for Townsquare's reporting as the Podcast's content could be fully gleaned through audio alone. *See* Opp. at 11–12. But Plaintiff offers no support for why Townsquare would be required to only include as much content as necessary to discuss its subject under the first fair use factor (i.e., why such a requirement would render its use not transformative). Accordingly, the Court is unpersuaded and instead considers this argument under the third fair use factor. *See infra*.

[2] This also distinguishes the instant case from those dealing with illustrative aids. "Defendants lose the presumption of transformative use . . . where, . . . 'the use is merely to provide an

The presence of the Photograph was incidental to Townsquare's embedding of the Video and therefore transformative of the Photograph's original purpose to capture Lynch. *See* AC ¶ 17.

Drawing all reasonable inferences for Hames, the Court finds this first factor strongly favors fair use.[3]

   b. Nature of the Work

The second fair use fact—the nature of the copyrighted work—"accounts for the fact that 'some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied.'" *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 87 (2d Cir. 2014) (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 586 (1994)).

> The Second Circuit has identified two sub-factors to consider: "(1) whether the work is expressive or creative, such as a work of fiction, or more factual, with a greater leeway being allowed to a claim of fair use where the work is factual or informational, and (2) whether the work is published or unpublished, with the scope for fair use involving unpublished works being considerably narrower."

---

illustrative aid depicting a person or event described in the work.'" *Lynk Media, LLC v. Peacock TV LLC*, No. 23-CV-5845, 2024 WL 2057235, at *3 (S.D.N.Y. May 8, 2024) (quoting *Whiddon v. Buzzfeed, Inc.*, 638 F. Supp. 3d 342, 351 (S.D.N.Y. 2022)). In such cases, courts consider whether the image is necessary to achieve a defendant's purpose or if it could be substituted. *See id.*; *see McGucken v. Newsweek LLC*, 464 F. Supp. 3d 594, 606 (S.D.N.Y. 2020) (finding "that photograph [wa]s not itself the focus of the article," but merely and illustrative aid").
  While Plaintiff argues that Townsquare used the Photograph as an illustrative aid, this is a better description of the Podcast's use of the Photograph, which may have been easily replaced with other images of Lynch. *See* Opp. at 10–11, 13 (discussing *Lynk*). As discussed above, Townsquare's use is tied to the Podcast itself and could not have been achieved through substitute images of Lynch.

[3] While "courts considering the first [fair use] factor are directed to consider whether a defendant acted in bad faith in its use of the copyrighted material," *McGucken v. Newsweek LLC*, 464 F. Supp. 3d 594, 605 (S.D.N.Y. 2020), the Court notes that neither party raised this issue, *see generally* Mot.; Opp, and declines to consider it.

*Yang v. Mic Network, Inc.*, 405 F. Supp. 3d 537, 546 (S.D.N.Y. 2019) (quoting *Blanch v. Koons*, 467 F.3d 244, 256 (2d Cir. 2006)). "Because both creative and factual original works are entitled to some level of copyright protection," the second fair use factor is rarely significant to the analysis of a published work. *Barcroft Media, Ltd. v. Coed Media Grp., LLC*, 297 F. Supp. 3d 339, 354 (S.D.N.Y. 2017).

While photographic portraits may have an informational purpose, they are properly considered creative where they capture subjects not "as they naturally appear[]" due to the creator's "directing the subjects, altering the backdrops, or otherwise doing much to impose creative force on the [i]mages or infuse the [i]mages with their own artistic vision." *Id.* at 354. Here, the Photograph captures Lynch's likeness but also portrays several creative elements such as the lighting, angle, and perspective, which Hames personally selected. *See* AC ¶ 19. The Photograph is therefore creative, rather than factual. *See Yang*, 405 F. Supp. 3d at 546 ("[W]hile the Photograph is a relatively straightforward depiction of Rochkind, as a posed portrait it evinces at least a modicum of artfulness, sufficient to designate it a 'creative' (rather than 'factual') work for the purposes of fair use analysis." (internal quotation omitted)).

"[A]lthough 'the creative nature of artistic images typically weighs in favor of the copyright holder, . . . the second factor may be of limited usefulness where the creative work of art is being used for a transformative purpose.'" *Blanch*, 467 F.3d at 257 (quoting *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 612 (2d Cir. 2006)). This is because a defendant's transformative use is often not to "exploit [a work's] creative virtues." *Id.* In this case, as Townsquare used the Photograph only because it was included in the Thumbnail, it is not clear the use relied on the Photograph's creative elements.

The second sub-factor—publication—favors Townsquare, for the Photograph was published prior to Townsquare's use. *See* AC ¶¶ 14, 32. Because the Photograph was creative and published, the second fair use factor counts in Plaintiff's favor, although with a limited impact given Townsquare's transformative use.

    c. <u>Portion of the Work Used</u>

The third fair use factor— "the amount and substantiality of the portion used in relation to the copyrighted work as a whole," 17 U.S.C. § 107(3)— "asks whether the copying used more of the copyrighted work than necessary and whether the copying was excessive," *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 98 (2d Cir. 2014). "The factor favors copyright holders where the portion used by the alleged infringer is a significant percentage of the copyrighted work, or where the portion used is 'essentially the heart of' the copyrighted work." *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 480 (2d Cir. 2004) (internal quotation omitted).

Nevertheless, "[t]he secondary use must be permitted to conjure up *at least* enough of the original to fulfill its transformative purpose." *Cariou v. Prince*, 714 F.3d 694, 710 (2d Cir. 2013) (emphasis in original). "[I]f copying the original 'any less would make the picture useless to the story,' the substantiality of the copying is 'of little consequence.'" *Yang v. Mic Network, Inc.*, 405 F. Supp. 3d 537, 546 (S.D.N.Y. 2019) (quoting *Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 24 (1st Cir. 2000)). The Court also notes that "this factor 'weighs less when considering a photograph—where all or most of the work often must be used in order to preserve any meaning at all—than a work such as a text or musical composition, where bits and pieces can be excerpted without losing all value.'" *N. Jersey Media Grp. Inc. v. Pirro*, 74 F. Supp. 3d 605, 621 (S.D.N.Y. 2015) (quoting *Fitzgerald v. CBS Broad., Inc.*, 491 F. Supp. 2d 177, 188 (D. Mass. 2007)).

13

The Court first analyzes the amount of the Photograph appearing in the Thumbnail. In support of its motion, Townsquare argues that the image is significantly cropped, as the background has been removed. *See* Mot. at 13. Townsquare additionally notes that the Thumbnail includes more than just the Photograph, such as images of other musicians and text related to the Podcast. *See id.*

The Court finds that these edits are too insignificant to find the Thumbnail does not reproduce the Photograph in full. In the supportive authority Townsquare cites, the defendants included only half of the image, *see Yang*, 405 F. Supp. 3d at 541, or largely obscured the image by darkening it and placing text on top of it, *see Harbus v. Manhattan Inst. for Pol'y Rsch., Inc.*, No. 19 CIV. 6124, 2020 WL 1990866, at *7 (S.D.N.Y. Apr. 27, 2020). Here, the Thumbnail removed the original background, part of Lynch's arm, and the neck of the guitar. *Compare* ECF No. 1-1 *with* ECF No. 34-3 at 3. Despite this, the primary subject—Lynch's face, his torso, and the body of his guitar—are still clearly depicted. *See* ECF No. 34-3 at 3. This portion is "essentially the heart" of the Photograph, weighing against fair use. *See NXIVM*, 364 F.3d at 480.

Even though Townsquare reproduced the Photograph in full, the Court must still evaluate whether such use was necessary to achieve its purpose. Here, the extent of Townsquare's use turned on whether it embedded the Video or left it out of the Article entirely. Put differently, once Townsquare decided to embed the Video, there was no way for it to limit the amount of the Photograph on public display. The Court has already determined that Townsquare had a transformative purpose in using the Photograph because its inclusion was merely incidental to embedding the Podcast, the subject of the Article. *See supra*. Therefore, in embedding the Video, Townsquare "used only as much of the Photograph as was already included in" the Thumbnail,

which was "no more than was necessary." *Walsh v. Townsquare Media, Inc.*, 464 F. Supp. 3d 570, 586 (S.D.N.Y. 2020) (internal quotation omitted); *see also Richardson v. Townsquare Media, Inc.*, No. 24 CIV. 4217, 2025 WL 89191, at *3 (S.D.N.Y. Jan. 14, 2025) ("[B]ecause it embedded the . . . post which contained the video in its entirety, Townsquare could not reasonably have copied only a portion of the video.").

Hames argues that Townsquare could have instead relied on the hyperlink to the Video, included an audio-only version of the Podcast, or licensed the Photograph from Plaintiff to achieve the Article's purpose without infringing on his copyright. *See* Opp. at 17. Faced with similar arguments, courts have found that requiring media outlets to directly license incidental images or solicit non-infringing alternatives "would have produced impractical results." *Clark v. Transp. Alternatives, Inc.*, No. 18 CIV. 9985, 2019 WL 1448448, at *4 (S.D.N.Y. Mar. 18, 2019) (finding that the use of other photographs, ability to license the copyrighted image, and choice to have no visual aid would not have achieved the defendant's purpose and did not weigh against fair use). Similarly, courts have found it permissible for a media outlet to provide its readers direct access to the content being reported on, rather than through hyperlinks or written descriptions of content. *See Walsh*, 464 F. Supp. 3d at 586 (finding that the inclusion of the social media post in the article was "the only image that could have accomplished [its] journalistic objective of describing a social media story").

This leaves the Court to consider whether Townsquare's inclusion of the Video, rather than embedding the audio alone, was reasonable. A "secondary work is not required to use only the absolute minimum of the original work necessary." *Yang*, 405 F. Supp. 3d at 547 (citing *Cariou*, 714 F.3d at 710). But the copying must not be excessive in relation to a defendant's purpose. *See*

*HathiTrust*, 755 F.3d at 99. In walking this fine line, the Court recognizes Plaintiff's allegation that the Article "does not comment on the actual video recording of [the] Podcast interview." AC ¶ 37. Because of this, Townsquare may have been able to achieve the same purpose through audio-only alternatives, *see* ECF No. 34-3 at 3 (noting that the Podcast is "available on this YouTube channel and all podcast formats"), if they conveyed the same content as the Video.

But, because the Video only features a portion of the full Podcast interview, the Court notes it was uniquely well suited to the Article's content. *See* ECF No. 34-2 at 4 (including the word "CLIPS" in the Thumbnail). While the full Podcast was more than an hour and a half long, the Video was a four-and-a-half-minute segment. *See* ECF No. 34-3 at 2 (noting the respective runtimes of the full Podcast and Video). Further, the excerpted interview discusses the exact topic on which the Article reports: Dokken's comments about Lynch and Warren DeMartini. *Compare* ECF No. 34-1 (the Video) *with* ECF No. 34-2 (the Article). Had Townsquare embedded the full-length Podcast, the Article's viewer would have potentially needed to listen to an interview twenty times as long, much of which could have been irrelevant to the Article's content.

The Court finds it was neither excessive nor unreasonable for Townsquare to use the Video, and therefore the Photograph, as opposed to embedding the full Podcast audio, as the latter would have achieved a very different effect. *See Yang*, 405 F. Supp. 3d at 547 ("[I]t is not plausible that Mic could have achieved the same effect by burying the lede in embedded tweets."). Because the inclusion of the entire Photograph was consistent with Townsquare's transformative purpose, the Court finds the third fair use factor to be neutral. *See Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 90 (2d Cir. 2014) (refusing to weigh the third factor in either party's favor where the "use of the entire recording was reasonable in light of [defendant's] purpose").

d. <u>Potential Effect of the Use on the Market or Value</u>

The fourth and final fair use factor considers "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). The relevant inquiry is "whether the copy brings to the marketplace a competing substitute for the original, or its derivative, so as to deprive the rights holder of significant revenues because of the likelihood that potential purchasers may opt to acquire the copy in preference to the original." *Authors Guild v. Google, Inc.*, 804 F.3d 202, 223 (2d Cir. 2015). "When a secondary use competes in the rightsholder's market as an effective substitute for the original, it impedes the purpose of copyright to incentivize new creative works by enabling their creators to profit from them." *Capitol Recs., LLC v. ReDigi Inc.*, 910 F.3d 649, 662 (2d Cir. 2018). "Courts look here not for theoretical or speculative harm, but for copying of 'sufficiently significant portions of the original as to make available a significantly competing substitute.'" *Walsh v. Townsquare Media, Inc.*, 464 F. Supp. 3d 570, 586 (S.D.N.Y. 2020) (quoting *Google*, 804 F.3d at 223).

"Because a news article recontextualizes a work and serves a different purpose, it is unlikely that someone who wanted to purchase the work would find reviewing the news article an adequate substitute." *Nicklen v. Sinclair Broad. Grp., Inc.*, 551 F. Supp. 3d 188, 198 (S.D.N.Y. 2021). This is especially true "where an original work is reproduced not on its own, 'but as part of an embedded post, alongside text and another image.'" *Richardson v. Townsquare Media, Inc.*, No. 24 CIV. 4217, 2025 WL 89191, at *3 (S.D.N.Y. Jan. 14, 2025) (quoting *Walsh*, 464 F. Supp. 3d at 586).

The Court finds "there is little risk that someone looking to license or purchase an image [of Lynch] would select the [Thumbnail] instead of the Photograph, thereby potentially diverting

17

revenue" to Townsquare from Hames. *Clark v. Transp. Alternatives, Inc.*, No. 18 CIV. 9985, 2019 WL 1448448, at *4 (S.D.N.Y. Mar. 18, 2019) (citing *Capitol Records*, 910 F.3d at 662–63). As the Thumbnail includes two other musicians and text referencing the Chuck Shute Podcast, it would not be a desirable option for someone looking to acquire an image of Lynch on his own, like the Photograph. *See id.* ("The Screenshot does not function as an illustration of a dockless bicycle, because it also contains the Post Article's headline, author byline, and photographer credit."); *Walsh*, 464 F. Supp. 3d at 586 ("[B]ecause the Photograph did not appear on its own, but as part of the Post, alongside text and another image, it is implausible that Defendant's use would compete with Plaintiff's business or affect the market or value of her work."). Drawing all inferences in Hames's favor, the Court concludes that Townsquare's use is unlikely to compete with Hames. Accordingly, the fourth factor weighs in favor of fair use.

    e. Totality of the Factors

"The four non-exclusive statutory factors discussed above are to be weighed together, along with any other relevant considerations, in light of the goals of copyright laws." *Walsh v. Townsquare Media, Inc.*, 464 F. Supp. 3d 570, 586 (S.D.N.Y. 2020) (citing *Authors Guild v. Google, Inc.*, 804 F.3d 202, 225 (2d Cir. 2015)). On the face of the Amended Complaint and incorporated exhibits, the Court finds the first and fourth factors weigh in favor of Townsquare, while the second factor favors Hames and the third is neutral. Considering the limited impact of the second factor given Townsquare's transformative use, *see supra*, this is sufficient to establish the affirmative defense of fair use at the motion to dismiss stage. *See Yang v. Mic Network, Inc.*, 405 F. Supp. 3d 537, 545–48 (S.D.N.Y. 2019) (finding the first, third, and fourth factors favor fair

use, while the second "count[ed] only slightly in Plaintiff's favor"). The Court concludes Townsquare's use of the Photograph was fair.

### III. Leave to Amend

While Hames requests leave to amend the complaint once more, leave may be denied where a plaintiff fails to identify "how amendment would cure the pleading deficiencies in its complaint." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) ("Leave may be denied for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." (internal quotation omitted)). Hames provides no additional allegations he would seek to make or other basis which would secure a Second Amended Complaint more success than his first. *See* Opp. at 21. As the Court finds "[a]ny [additional] amendment to the complaint would be inherently futile because the works are what they are," *Kelley v. Morning Bee, Inc.*, No. 1:21-CV-8420, 2023 WL 6276690, at *16 (S.D.N.Y. Sept. 26, 2023), leave to amend is denied.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Townsquare's motion to dismiss. The Clerk of Court is respectfully directed to terminate the pending motion at ECF No. 32, enter judgment, and close this case.

**SO ORDERED.**

Dated:  **September 29, 2025**
        **New York, New York**

**ANDREW L. CARTER, JR.**
**United States District Judge**